IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSALIND GAINER<br>*Plaintiff(s)* | :<br>:<br>: |
| v. | : CIVIL NO. 24-1296 |
| BORDERTOWN TRANSPORTATION, INC.<br>AND OSCAR MEZA<br>*Defendant(s)* | :<br>:<br>:<br>: |

## MEMORANDUM OF LAW

At issue here is whether this action must be remanded to the Philadelphia County Court of Common Pleas. Oscar Meza and Bordertown Transportation, Inc. ("Defendants") filed their notice of removal on the basis of diversity of citizenship on March 27, 2024, more than one (1) year after the Plaintiff filed her lawsuit in the Philadelphia County Court of Common Pleas on January 13, 2023. Plaintiff Rosalind Gainer contended that the case must be remanded, and Defendants asserted that Plaintiff acted in bad faith to prevent removal and remand should be denied. In consideration of the parties' filings (ECF No. 4, 5, 11) and both parties arguments made at the October 31, 2024 hearing on Plaintiff's Motion to Remand (ECF No. 12), the Court grants Plaintiff's Motion.[1]

---

[1] In addition to Plaintiff's Motion to Remand, Plaintiff's counsel also requested attorneys' fees under 28 U.S.C. § 1447(c) at the October 21, 2024 hearing, arguing that Defendants were unreasonable to file the removal notice. As outlined below, Defendants have set forth reasonable arguments to explain why they believed Plaintiff had acted in bad faith under 28 U.S.C. § 1446(c). Therefore, Plaintiff's oral motion for attorneys' fees is denied.

1

## BACKGROUND

The Court will not go into a complete recitation of the facts and provides only the facts operative to forming this opinion. On March 2, 2021, Plaintiff was directing traffic while behind the wheel of a truck mounted attenuator as part of a construction plan when Defendant Meza crashed into Plaintiff's truck. Complaint at 12-13, *Gainer v. Meza et al*, (Phila. County C.P. #2301-01292). Plaintiff sustained numerous injuries and filed a complaint in Philadelphia County Court of Common Pleas against Meza, Meza's employer Bordertown Transportation, Inc., and the Pennsylvania Department of Transportation ("PennDOT") on January 13, 2023. Id.

After Plaintiff filed the complaint, she served Defendants with interrogatories and requests for production on February 10, 2023, and served PennDOT with interrogatories and request for production on September 27, 2023. Def.'s Ex. D; Def. Br. in Opp'n to Pl.'s Mot. to Remand (ECF No. 5) at 3 ("Def. Br."); Def.'s Ex. F. Plaintiff also deposed Meza on September 27, 2023. Pl.'s Ex. B. PennDOT completed Plaintiff's discovery requests on January 31, 2024—after the January 1, 2024 fact discovery deadline had passed—but Plaintiff did not file a motion to compel. Def. Br. at 13. PennDOT answered Plaintiff's complaint on February 2, 2024, but Plaintiff did not file a motion for default or to dismiss PennDOT's response. Id. at 12. On February 28, 2024, the parties had a settlement conference, and Plaintiff filed a settlement memorandum in advance stating her intention to dismiss her claims against PennDOT. Id. at 4. On March 19, 2024, the Plaintiff and Defendants jointly stipulated to dismiss PennDOT from the lawsuit, and Defendants filed a Notice of Removal with this Court on March 27, 2024. Id.

2

Plaintiff moved to remand the case back to the Philadelphia County Court of Common Pleas on April 24, 2024. Pl.'s Mot. to Remand (ECF No. 4).

## STANDARD

A case filed in state court may be removed to federal court on the basis of diversity of citizenship of the parties. 28 U.S.C. § 1446(c). The removal statute, however, prescribes that a case may not be removed on the basis of diversity "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

## DISCUSSION

Bad faith under 28 U.S.C. § 1446(c)(1) means "intentional conduct on behalf of the plaintiff which denies the defendant the opportunity to remove the case to federal court." *Bolus v. IAT Ins. Grp.*, No. CV 19-1712, 2019 WL 3001628, at *3 (E.D. Pa. July 9, 2019) (citing *Plaxe v. Fiegura*, No. CV 17-1055, 2018 WL 2010025, at *3 (E.D. Pa. Apr. 27, 2018)). Bad faith can be demonstrated through circumstantial evidence. *Id*. Plaintiff argued that caselaw analyzing fraudulent joinder is also relevant to a bad faith determination. Transcript of Oral Argument at 12, *Gainer v. Bordertown Transportation, Inc. et al* (No. 24-cv-1296) [hereinafter "Transcript"]. However, a fraudulent joinder analysis is a forward-looking exercise that takes a look at the pleadings and a "limited look outside the pleadings" to determine whether a plaintiff has any reasonable basis to allege a cause of action against a defendant and whether that defendant

should be excised from the case for jurisdictional purposes. *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019). On the other hand, statutory analysis of bad faith is a backward-looking exercise which looks at all the available evidence to determine whether plaintiff engaged in intentional conduct to deny defendant the chance for removal. *Hoyt*, 927 F.3d at 293 ("When it comes to bad faith, by contrast, the question is what motivated the plaintiff in the past—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'").

Few cases within the Third Circuit have defined bad faith conduct under the statute. In *Bolus* and *Plaxe*, both courts found that the removing parties had not satisfied their heavy burden of persuasion. *Bolus*, 2019 WL 3001628, at *4; *Plaxe* 2018 WL 2010025, at *7. For instance, the *Bolus* and *Plaxe* courts determined that plaintiffs' decisions not to seek discovery from the non-diverse defendants and decisions not to include the non-diverse defendants in settlement agreements did not constitute bad faith because plaintiffs had "offered a plausible explanation." *See Plaxe* 2018 WL 2010025, at *7; *Bolus*, 2019 WL 3001628, at *4.

Defendants noted that the Fifth Circuit is the only federal appellate court that has discussed what constitutes bad faith under 28 U.S.C. § 1446(c)(1). *Hoyt*, 927 F.3d at 292 (finding bad faith because plaintiffs dismissed a non-diverse defendant two days and one year after filing suit, the trial witness list did not include any fact witnesses from non-diverse defendant, and the plaintiffs' expert witnesses made no serious effort to establish the defendant's liability); Def. Br. at 7-8.

4

Defendants analogized to the facts in *Hoyt*, and highlighted other facts, to establish Plaintiff's bad faith. Specifically, Defendant alleged (1) Plaintiff did not attempt to enter default judgment against PennDOT or move to strike PennDOT's untimely answer; (2) Plaintiff did not move to compel PennDOT's compliance with discovery despite PennDOT's approximately 1 month tardiness to respond; (3) Plaintiff dismissed PennDOT from the suit a little over 2 months after the passing of the 1-year removal deadline; (4) Plaintiff's expert witness did not attempt to establish PennDOT's liability in their report; (5) Plaintiff did not need to await PennDOT's discovery response because the police crash report said the accident did not occur in a work zone, which is a necessary predicate to overcoming sovereign immunity; (6) Plaintiff did not attempt to settle with PennDOT before dismissing PennDOT from the lawsuit; and (7) Plaintiff sought discovery from Defendants approximately 1 month after she filed the complaint but sought discovery from PennDOT approximately 8 months after she filed the complaint. Def. Br. at 11-15. This Court will take each of Defendants' complaints in turn.

In response to Defendant's first two assertions related to bad faith, Plaintiff answered at the hearing that many of their decisions were based on practice customs in the Philadelphia County Court of Common Pleas or based on strategy—not based on a motivation to thwart Defendants' removal rights. Transcript at 8-9. Plaintiff counsel contended anecdotally that motions for default judgment, to strike a response, and to compel discovery would not functionally improve Plaintiff's position because he had never seen these motions successfully granted. Transcript at 8-9.

Third, Plaintiff counsel contended that they chose to dismiss PennDOT from the suit, jointly with Defendants, because they "felt Bordertown and Meza bear the vast majority of liability." Transcript at 8. Moreover, they wanted to gut Defendants' likely joint tortfeasor argument at trial. Transcript at 7-8. In essence, Plaintiff explained that Defendants' decision to jointly dismiss PennDOT from the lawsuit and drop their crossclaim against PennDOT benefited Plaintiff's position because Defendant could not later argue credibly that PennDOT was jointly responsible. Transcript at 10-11. If PennDOT was indeed jointly liable, Defendant would not have agreed to dismiss it from the lawsuit, so goes Plaintiff's argument. Transcript at 10-11.

On a separate basis, Plaintiff explained that they planned to pursue a "bad-faith judgment" against Bordertown's insurance carrier for not paying the policy limits in time. Transcript at 32. In an insurance bad-faith case, insurance carriers may defend that they believed there was an alternative tortfeasor. Transcript at 32. But Plaintiff reasoned that without PennDOT in the lawsuit, it is "very hard as a defense to a bad-faith case to say we thought someone else might bear the blame." Transcript at 33.

Moreover, Plaintiff counsel explained that they waited until March 19, 2024 to dismiss PennDOT from the lawsuit because they were waiting to fully assess Defendants' expert report, which was dated January 16, 2024—three days after the one-year removal deadline of January 13, 2024. Transcript at 29-30, 37. The report blamed road conditions, in part, for Plaintiff's injuries. Transcript at 10. Afterward, Plaintiff determined, from an efficiency standpoint, it was best to remove PennDOT from the case. Transcript 10-11. Plaintiff counsel explained that Defendants had already admitted liability, but PennDOT had not. Transcript at 11. Plaintiff said

6

it would be an easier, cleaner, and cheaper trial without PennDOT because then they would not need to establish the added element of PennDOT's liability. Transcript at 11, 31-32. In addition, Plaintiff argued that PennDOT's liability is capped at $250,000 because it is a state agency, so it was better strategically to just dismiss PennDOT from the lawsuit rather than confuse the jury with an added liability element. Transcript at 10, 17, 32.

Fourth, Plaintiff did not explicitly address Defendants' point that Plaintiff's expert did not analyze PennDOT's liability, but Plaintiff argued generally that, strategically, it was beneficial to shift attention away from PennDOT's contested liability and toward Defendants' recklessness. Transcript at 11.

Fifth, Plaintiff argued that PennDOT did not raise a sovereign immunity defense, and anecdotally, Plaintiff recalls that his firm had not lost a sovereign immunity summary judgment motion in Philadelphia. Transcript at 12-13.

Sixth, Plaintiff explained that they did not "have successful settlement conversations with [PennDOT]." Transcript at 22.

Seventh, Plaintiff cited their good relationship and pre-litigation settlement discussions with Defendants' counsel as reasons for why Defendants was served with discovery requests before PennDOT. Transcript at 6, 28. Plaintiff and Defendants had "already had a back and forth on the case." Transcript at 28.

After reviewing the parties' briefs and hearing their arguments, this Court determines that Defendants have not met their heavy burden of demonstrating Plaintiff's bad faith. Plaintiff offered plausible strategic arguments in explanation of its decisions. Whether this Court finds

Plaintiff counsel's strategic decisions as the best course of action is irrelevant, as the bad faith determination merely asks whether Plaintiff engaged in intentional conduct to deny Defendants the opportunity to remove the case to federal court. In cases of very poor strategic judgment, this Court may call into question the sincerity of a plaintiff's "strategic decisions" and make a finding of bad faith. This is not such a case, as Plaintiff has offered plausible strategic explanations in response to Defendants complaints. Therefore, Plaintiff's Motion to Remand is granted.

## CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Remand to the Philadelphia County Court of Common Pleas is granted.

BY THE COURT:

_____
THE HONORABLE KAI N. SOCTT
United States District Court Judge